**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
E-mail: bheikali@faruqilaw.com
Ruhandy Glezakos (SBN 307473)
E-mail: rglezakos@faruqilaw.com
Joshua Nassir (SBN 318344)
E-mail: jnassir@faruqilaw.com
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

*Attorneys for Plaintiffs and the Putative
Classes*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

LUZ SANCHEZ and M.S., a minor, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

NINTENDO OF AMERICA INC.,

Defendant.

CASE NO.

## CLASS ACTION COMPLAINT

1. **Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***
2. **Violation of California Civil Code § 1750, *et seq.***
3. **Violation of California Business and Professions Code § 17500, *et seq.***
4. **Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability**
5. **Unjust Enrichment/Quasi-Contract**
6. **Violation of the Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.* for Breach of Implied Warranty of Merchantability**
7. **Declaratory and Injunctive Relief**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiffs Luz Sanchez and M.S. ("Plaintiffs") bring this action individually and on behalf of all those similarly situated for damages, declaratory relief, and injunctive relief against Defendant Nintendo of America Inc. ("Defendant" or "Nintendo"). Plaintiff M.S., a minor, conducts this action by and through his mother and guardian Luz Sanchez. Plaintiffs allege the following based on the investigation of counsel and based on information and belief.

## INTRODUCTION

1.      This is a consumer protection class action arising out of the sale of Nintendo's Joy-Con controllers ("Joy-Cons"). With the sale of each Nintendo Switch console, Defendant includes two detachable Joy-Cons that gamers use to control an object or character in the game.

2.      Unbeknownst to consumers, these controllers experience Joy-Con drift, a defect that occurs when the joystick stops working properly ("Joy-Con Drift"). This will cause on-screen characters or the cursor to "drift" even when players are not moving the joystick. Once the defect manifests, it progressively gets worse until the Joy-Cons become inoperable, and consumers are forced to buy a new pair of controllers. Defendant has known and had exclusive knowledge of the problem for years, and still, has done nothing to adequately fix it or alert consumers of its existence.

3.      Consumers who purchased the Nintendo Switch Lite, a handheld device similar to the Nintendo Switch, also report experiencing Joy-Con Drift. The Nintendo Switch Lite and Joy-Cons (the "Products") share similar design features and/or hardware components likely causing the same defect in both devices.

4.      Defendant is well aware that the Products have an unfixable defect. Indeed, Nintendo president Shuntaro Furukawa apologized for the defect on June 30,

**CLASS ACTION COMPLAINT**

2020,[1] after years of complaints from consumers. Yet, Defendant has never disclosed, through its advertising or packaging, that the Products suffer from Joy-Con Drift, nor has Defendant stopped selling the Products.

5.    This is after Nintendo heavily promoted the functionality and performance of the Products. Nintendo released several statements with representations like, "[T]hose amazing controllers, the Joy-Con, which combine all the gameplay innovations Nintendo's invented, and then adds to them."[2] "The Joy-Con controllers fit a lot of features into one small package," "[t]he new HD rumble feature allows for high definition vibration[,] [i]t can reproduce sensations and experiences in entirely new ways."[3] These affirmative misrepresentations lead consumers to believe that the Products would at least work properly and not have Joy-Con Drift, a defect that undermines its central function—the control of on-screen characters.

6.    As a result of Defendant's unlawful conduct, Plaintiffs and members of the proposed Classes (the "Classes" are defined below) have purchased Products they otherwise would not have purchased or would have paid less for. Therefore, Plaintiffs and other members of the Class have been injured.

7.    Plaintiffs bring this action on behalf of themselves and all others similarly situated to obtain monetary damages for those who have purchased Defendant's defective Products, and redress for Defendant's violation of various state and federal laws.

---

[1] Vic Hood, *Nintendo finally apologizes for Joy-Con drift amid lawsuit*, techradar, June 30, 2020 https://www.techradar.com/news/nintendo-finally-apologizes-for-joy-con-drift-amid-lawsuit.

[2] Valiantenger, *Nintendo Switch Presentation 2017*, YouTube (Jan. 14, 2017), https://www.youtube.com/watch?v=JsiRY521Nis ("Switch Presentation") (at 59:38).

[3] Nintendo, *Nintendo Switch Hardware Overview*, YouTube (Feb. 7, 2017), https://www.youtube.com/watch?v=gUEhQ65FOJ8 ("Switch Overview") (at 2:19, 3:11).

**CLASS ACTION COMPLAINT**

## JURISDICTION AND VENUE

8.     The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, this is a class action in which there are more than 100 Class members, and at least some Class members are citizens of states different from Defendant.

9.     This Court has personal jurisdiction over Defendant because Defendant intentionally avails itself of the markets in California through the promotion, marketing, and sale of the Products in California to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2). Defendant resides and conducts business in this District and in the State of California. Indeed, Defendant has a regular and established place of business at 2000 Bridge Pkwy #200, Redwood City, California 94065 ("Redwood City Offices"). At this location, it has its largest sales and marketing office,[4] as well as a dedicated merchandising field team who work with retail stores.[5] Furthermore, upon information and belief, Plaintiffs' claims against Defendant for the sale and marketing of defective Products emanate from Defendant's Redwood City Offices in this District.

## PARTIES

11.     Plaintiff Luz Sanchez ("Ms. Sanchez") is a citizen and resident of the State of California, and at all relevant times in this action resided in Firebaugh,

---

[4] *See PlayVision Labs, Inc. v. Nintendo of America Inc.*, Case No. 3:14-cv-312-GCM, ECF No. 20 (W.D.N.C. Nov. 18, 2014) (Nintendo's Memorandum ISO Motion to Transfer Venue granted in *PlayVision Labs, Inc. v. Nintendo of America Inc.*, Case No. 3:14-cv-312-GCM, 2014 WL 6472848 (W.D.N.C. Nov. 18, 2014)) (Nintendo states that its largest sales and marketing office is in Redwood City, California).

[5] *About Us*, Nintendo of America Careers, https://careers.nintendo.com/about-us/ (last visited October 2, 2020).

3

**CLASS ACTION COMPLAINT**

California. Plaintiff Luz Sanchez is not a signatory to Nintendo's Terms of Use.

12.     Plaintiff M.S. ("M.S.") is a citizen and resident of the State of California, and at all relevant times in this action resided in Firebaugh, California. The Nintendo Switch that Ms. Sanchez purchased was played by M.S. He was eight years old when he set up the console, and during that process, he agreed to certain terms of use set forth by Nintendo. Upon information and belief, Nintendo's Terms of Use included an arbitration agreement and class action waiver. M.S. hereby disaffirms Nintendo's Terms of Use, including the arbitration agreement and class action waiver.

13.     On or about December 2018, Ms. Sanchez purchased a Nintendo Switch console for personal, family, and household use. The Nintendo Switch came with a set of left and right Joy-Con controllers.

14.     Before purchasing the Nintendo Switch, Ms. Sanchez had no reason to know that the Joy-Con controllers were or would become defective. However, within a month of the purchase, Plaintiff M.S. began experiencing Joy-Con Drift with both controllers. Specifically, the joysticks on both the left and right Joy-Cons registered movement even when they were not being manually controlled.

15.     By September 2019, less than a year after the Joy-Cons were purchased, the Joy-Con Drift became so pronounced that the controllers become inoperable for general gameplay use.

16.     On or about November 28, 2019, Ms. Sanchez purchased another set of Joy-Cons.

17.     By about June 2020, these replacement controllers also began exhibiting Joy-Con Drift, severely limiting general gameplay.

18.     At the time Ms. Sanchez purchased the Nintendo Switch, she did not know about the defect, and Nintendo did not disclose the defect to her. Had she known about the defect, she would not have purchased the Nintendo Switch or additional controllers, or she would have paid substantially less for them.

4

**CLASS ACTION COMPLAINT**

19.   Defendant Nintendo of America, Inc. is registered with the Secretary of State to do business in California. It also manufactures, promotes, and sells the Products in California, and upon information and belief, has its largest sales and marketing office in Redwood City, California.

## FACTUAL ALLEGATIONS

### A.   Defendant's Joy-Con Controllers

20.   Nintendo is a consumer electronics and video game company. It develops, produces, and markets videogame software and hardware, including the video game console Nintendo Switch and Nintendo Switch Lite.

21.   The Nintendo Switch is a hybrid console that can be used as a home console connected to a television or as a portable device. It has two wireless Joy-Con controllers (*shown below*), with standard buttons and directional joysticks for user input, motion sensing, and tactile feedback:



**CLASS ACTION COMPLAINT**

22.   The Joy-Con controllers can attach to both sides of the console to support handheld gameplay:



23.   They can also connect to a grip accessory to provide a traditional home console experience:



**CLASS ACTION COMPLAINT**

24.    Joy-Con controllers can also be used individually in the hand to support single-player and multiplayer modes:



25.    The Nintendo Switch Lite (*shown below*) is like the Nintendo Switch, but does not have detachable Joy-Con controllers (though both share the same joystick defect and design), and is only a handheld portable device:



7

**CLASS ACTION COMPLAINT**

26.    The Nintendo Switch is sold for about $299.99, which includes the set of detachable Joy-Con controllers.

27.    A replacement set of Joy-Con controllers is sold for about $79.99, and $49.99 for an individual left or right Joy-Con controller.

28.    The Nintendo Switch Lite is sold for about $199.99. As discussed above, it does not have detachable Joy-Con controllers, but does share the same joystick design.

29.    Defendant made it a point to promote and advertise the functionality and performance of the Products. For example, Nintendo has made the following representations:

- "[E]ach joy-con can be used as a *fully functioning* individual controller."[6] (emphasis added)

- "[T]hose amazing controllers, the Joy-Con, which combine all the gameplay innovations Nintendo's invented, and then adds to them."[7]

- "The Joy-Con controllers fit a lot of features into one small package." [8]

- "[T]he new HD rumble feature allows for high definition vibration. It can reproduce sensations and experiences in entirely new ways."[9]

30.    Indeed, through various media platforms like YouTube, Nintendo shows consumers using the Products to control on-screen characters in sports games, race car driving, and fighting sequences. These are fundamental characteristics of the

---

[6] Switch Presentation, YouTube (Jan. 14, 20017), https://www.youtube.com/watch?v=JsiRY521Nis (at 13:31).

[7] *Id*. at 59:38.

[8] Switch Overview, YouTube (Feb. 7, 2017), https://www.youtube.com/watch?v=gUEhQ65FOJ8 (at 3:11).

[9] *Id*. at 2:19.

**CLASS ACTION COMPLAINT**

1   Products that requires precision and cannot be accomplished with Joy-Con Drift.[10]

2          31.    Plaintiffs recall seeing such representations online. Specifically, Ms.

3   Sanchez relied on representations that the Joy-Cons could be used as fully functioning

4   individual controllers, and M.S. relied on representations that the controllers were

5   amazing based on their functionality and features.

6          32.    Based on these representations of the functionality and performance of

7   the Products, consumers reasonably believed that they were purchasing Products that

8   would at least function properly and not have Joy-Con Drift.

9       **B.    Defective Joy-Con Controllers and Nintendo Switch Lites**

10         33.    During the relevant time period, Defendant manufactured, marketed, and

11  sold the defective Products. These Products share a common defect known as "Joy-

12  Con Drift" that occurs when the joystick stops working properly.

13         34.    This will cause on-screen characters or cursor to drift even when players

14  are not moving the joystick.

15         35.    Upon information and belief, once the defect occurs, it cannot be fixed.

16         36.    As a result, consumers are forced to pay additional costs to have the

17  Products replaced.

18         37.    Joy-Con Drift greatly impacts consumers and the Products' value

19  because the defect severely limits gameplay once it manifests.

20         38.    Defendant has yet to offer consumers experiencing Joy-Con Drift a

21  permanent solution.

22      **C.    Consumer Complaints**

23         39.    Below are a few examples of the numerous consumer complaints made

24

25

26  _____

27  [10] Nintendo, *First Look at Nintendo Switch*, YouTube (Oct. 20, 2016),
    https://www.youtube.com/watch?v=f5uik5fgIaI&t=4s.

28

**CLASS ACTION COMPLAINT**

online and directly to Defendant regarding Joy-Con Drift.[11]

- Posted by Axzas, January 15, 2019:[12]

  So I've had this problem for a long time and it's to the point where I can no longer deal with it. Both of my joycons drift. My right joycon seems basically destroyed and is far worse than my left joycon. Is there any way to fix this? I've tried cleaning my joycons with compressed air and it fixed it for about 2 days and then they both went back to how they were. I would really love to fix my joycon and I'm wondering if there is a way to send it to get fixed? I really don't want to spend $80 for another set of controllers. Everything else seems to work fine except that they drift like crazy. Please tell me there's a way to go get it fixed. Thank you for reading.

- Posted by Farore's Chosen, January 23, 2020:[13]

  Yeah the joycons suck. I've never had issues with controllers like this before. Even my 10+ yo GBA, who's shoulder button occasionally gets stuck, and who's a and b buttons are a bit sunk in still works real good. Had ours since Feb and its already drifting. We've got two other controllers for our Switch.

- Posted by akaris1, April 3, 2020:[14]

  Yes Drift is still an issue in 2020

- Posted by Gram, July 17, 2020:[15]

  My left joycon started drifting a bit not long after I got my switch. From what I've heard, it starts small like that but it can eventually get really

---

[11] Online complaints reproduced here have been copied verbatim, so any grammatical or typographical mistakes are attributable to the original author.

[12] Axzas, Nintendo Support Forums (Jan. 15, 2019) https://en-americas-support.nintendo.com/app/social/questions/detail/qid/77430/~/joycon-drifting.

[13] Farore's Choice, Zelda Dungeon (Jan. 23, 2020), https://zeldadungeon.net/forum/threads/joycon-drift-issues.66246/page-2 (post #17).

[14] akaris1, reddit (Apr. 3, 2020), https://www.reddit.com/r/Switch/comments/fublee/is the joycon drift still an issue in 2020/fmc575x/?utm_source=reddit&utm_medium=web2x&context=3.

[15] Gram, Nintenpedia (July 17, 2020), https://nintenpedia.com/forum/threads/is-the-switch-joy-con-drift-really-that-bad.39203/ (post #2).

**CLASS ACTION COMPLAINT**

bad, making games very hard to play.

**D.    Nintendo Was Aware and Had Exclusive Knowledge of the Defect**

40.    Nintendo was aware of the Joy-Con Drift defect for years because it received numerous complaints online (as shown above) and directly from consumers.

41.    Indeed, by on or about July 14, 2019, a thread on the Nintendo Switch subreddit about Joy-Con drift was upvoted over 25,000 thousand times.[16]

42.    Based on the exclusive knowledge Defendant received from consumer complaints, on or about July 23, 2019, it created an internal memo instructing its customer service department to fix Joy-Con Drift for free.[17]

43.    Yet, Defendant concealed and suppressed this information by refusing to admit or disclose that the Products were defective.

44.    Nintendo manufactures, develops, markets, sells, and offers support services for Joy-Cons and Nintendo Switch Lite. Thus, upon information and belief, it is responsible for testing the controllers, and Defendant was aware of the Joy-Con Drift defect.

45.    Indeed, on or about June 30, 2020, Nintendo president Shuntaro Furukawa apologized for the trouble caused to customers experiencing Joy-Con Drift and stated that Nintendo was continuing to aim to improve their products.[18]

46.    Yet, Defendant continues to market and sell the Products with full knowledge of the defect and without disclosing the Joy-Con Drift defect to consumers in its marketing, promotion, or packaging.

---

[16] Gita Jackson, *Joy-Con Drift Is Becoming A Real Problem On The Switch*, Kotaku (July 16, 2019), https://kotaku.com/joy-con-drift-is-becoming-a-real-problem-on-the-switch-1836417809.

[17] Patrick Klepek, *Internal Nintendo Memo Instructs Customer Service to Fix 'Joy-Con Drift' for Free*, Vice (July 23, 2019), https://www.vice.com/en_us/article/8xzzva/internal-nintendo-memo-instructs-customer-service-to-fix-joy-con-drift-for-free.

[18] Nicole Carpenter, *Nintendo president apologizes for Joy-Con drift*, Polygon (June 30, 2020), https://www.polygon.com/2020/6/30/21308085/joy-con-drift-apology-nintendo-president.

11

**CLASS ACTION COMPLAINT**

47.     Upon information and belief, Defendant has had a financial motive to conceal the defect, as it did not want to stop selling the Products, and/or would need to expend a significant amount of money to cure the defect.

48.     Despite Defendant's affirmative misrepresentations as to the functionality of the Products, Defendant could have easily disclosed the defect to potential consumers in any number of ways, including on the product's packaging or the set-up screen.

49.     Further, as a result of Defendant's misrepresentations, Plaintiffs and members of the Classes did not expect the Products to have Joy-Con Drift, a defect where the controller registers an input even where there is none. Similar to a computer mouse, the ability to control the cursor is a central function of the Product.

50.     Because of Defendant's actions, consumers have suffered an injury-in-fact and are entitled to damages, and other appropriate relief.

## CLASS ACTION ALLEGATIONS

51.     Plaintiffs, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3), bring this action on behalf of the following Nationwide Class, California Subclass, and California Consumer Subclass ("Classes"):

a.    **The "Nationwide Class"**: All persons in the United States who purchased a Nintendo Switch, Joy-Con controllers, or a Nintendo Switch Lite, within the applicable statute of limitations period.

b.    **The "California Subclass"**: All persons in California who purchased a Nintendo Switch, Joy-Con controllers, or a Nintendo Switch Lite, within the applicable statute of limitations period.

c.    **The "California Consumer Subclass"**: All persons in the United States who purchased a Nintendo Switch, Joy-Con controllers, or a Nintendo Switch Lite for personal, family, or household purposes in the state of California, within the applicable statute of

12

**CLASS ACTION COMPLAINT**

limitations period.

52.     The Nationwide Class, California Subclass, and California Consumer Subclass are collectively referred to herein as the "Classes."

53.     Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors; all persons who make a timely election to be excluded from the Classes; the judge to whom this case is assigned and any immediate family members thereof; and any persons who assert claims for personal injury.

54.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes after having had an opportunity to conduct discovery.

55.     Plaintiffs Luz Sanchez and M.S. are members of the Nationwide Class, California Subclass, and California Consumer Subclass.

56.     <u>Numerosity</u>: The members of the Classes are so numerous that individual joinder of all Classes members is impracticable. Since the release of the Nintendo Switch on March 3, 2017, Defendant has sold a total of approximately 22.12 million units in the Americas.[19] The Nintendo Switch Lite launched on September 20, 2019 and has since sold approximately 2.33 million units in the Americas.[20] With a total of 24.45 million units sold in the Americas, there are at least thousands of Class members in the United States.

57.     <u>Commonality and Predominance:</u> This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.     Whether Defendant's conduct violated the laws and/or regulations

---

[19] *Dedicated Video Game Sales Units* (Consolidated Hardware/Software Sales Transition tab, Consolidated Sales Transition by Region in Historical Data for details about prior fiscal years link, Consolidated Sales Transition by Region) (March 31, 2020), https://www.nintendo.co.jp/ir/en/finance/hard_soft/number.html.

[20] *Id*.

**CLASS ACTION COMPLAINT**

asserted herein;

b.    Whether the Products are defective;

c.    Whether the affirmative representations discussed herein that Defendant made about Joy-Con Controllers and Nintendo Switch Lite were or are false, misleading, or likely to deceive a reasonable consumer;

d.    Whether the representations discussed herein were material to a reasonable consumer;

e.    Whether Defendant's conduct violates public policy;

f.    Whether Plaintiffs and the other Class members have been injured and the proper measure of their losses as a result of those injuries;

g.    Whether Defendant knowingly failed to disclose the existence and cause of the defect;

h.    Whether Defendant placed the Joy-Con Controllers and Nintendo Switch Lite into the stream of commerce in the United States with knowledge of the defect;

i.    Whether Defendant knew or should have known that Joy-Con Controllers and/or Nintendo Switch Lite were defective;

j.    Whether Plaintiffs and the other Class members are entitled to damages, including punitive damages, as a result of Defendant's conduct alleged herein, and if so, the amount or proper measure of those damages; and

k.    Whether Plaintiffs and the other Class members are entitled to injunctive, declaratory, or other equitable relief.

58.    Typicality: Plaintiffs' claims are typical of those of the other Class members because, among other things, Plaintiffs and all Class members were injured in a similar manner through the uniform conduct by Defendant described herein.

59.   <u>Adequacy of Representation:</u> Plaintiffs are adequate representatives of the Classes because Plaintiffs' interests do not conflict with the interests of the other Class members Plaintiffs seek to represent. In addition, Plaintiffs have retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of the Classes, and the interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

60.   <u>Declaratory and Injunctive Relief:</u> Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

61.   <u>Superiority:</u> A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**CLASS ACTION COMPLAINT**

# CAUSES OF ACTION

## COUNT I
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (*for the California Subclass*)

62.     Plaintiffs re-allege and incorporate Paragraphs 1-61 as if fully set forth herein.

63.     Plaintiffs bring this claim individually and on behalf of the California Subclass.

64.     Plaintiffs and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

65.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

66.     In the course of manufacturing, selling, and marketing the defective Products, Defendant engaged in "unlawful" business practices by violating the California Consumers Legal Remedies Act, and other applicable state and federal laws described herein.

67.     As a result of Defendant's unlawful business acts and practices, including misrepresentations, omissions, and fraudulently concealing material information and suppressing the truth, Defendant has and continues to unlawfully obtain money from Plaintiffs and members of the Classes.

68.     Under the UCL, a business act or practice is "unfair" if the defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

69.     Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is unfair, unlawful, misleading, and is injurious to consumers who seek to purchase Products that are not defective. Plaintiffs and members of the California Subclass were deceived by Defendant's fraudulent omissions and

16

**CLASS ACTION COMPLAINT**

misrepresentations. Specifically, Defendant manufactured, promoted, and sold the Products which were substantially certain to fail within the useful life of the Products. It fraudulently concealed the defect at the time of sale and after the defect manifested, which is of no benefit to consumers. Plaintiffs and members of the California Subclass could not have avoided these claimed injuries because Defendant knowingly and fraudulently concealed material information. Upon information and belief, Defendant also had a financial motive to conceal the defect, as it did not want to stop selling the Products, and/or would need to expend a significant amount of money to cure the defect.

70.    Furthermore, Defendant is aware and had exclusive knowledge of the defect (as described *supra*) and has a duty to disclose the defect to consumers.

71.    Receiving money as a result of manufacturing, promoting, selling, and mispresenting the defective Products is contrary to public policy and is immoral, unethical, oppressive, unscrupulous and substantially injures consumers. And, as demonstrated by the many California laws prohibiting such practices, there is no justification or motive that outweighs the harm caused by Defendant's defective Products. Therefore, Defendant's conduct was and continues to be unfair.

72.    Plaintiffs and the members of the California Subclass paid large sums of money to Defendant to receive Products they believed were not defective based on Defendant's representations and/or promises— which they did not receive. As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiffs and members of the California Subclass.

73.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

74.    Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products would be fit for ordinary use, when they are not. Furthermore, Defendant failed to disclose a known

17

**CLASS ACTION COMPLAINT**

defect in the Products, as discussed herein, which was a material fact that Plaintiffs and members of the California Subclass relied upon and influenced their decision to purchase the Products. As such misrepresentations misled and were likely to deceive Plaintiffs and members of the California Subclass, Defendant's conduct was "fraudulent."

75.    As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiffs, and members of the California Subclass.

76.    Defendant knew or should have known, and had exclusive knowledge that its material misrepresentations and omissions would be likely to deceive and harm the consuming public and result in consumers making payments to Defendant under the false impression about the Products.

77.    Plaintiffs and the California Subclass lost money and suffered injury-in-fact by purchasing Defendant's Products, and Defendant was unjustly enriched by receiving payments from Plaintiffs and the California Subclass in return for providing Plaintiffs and the California Subclass Products that were not fit for ordinary use and defect free.

78.    Unless restrained and enjoined, Defendant will continue to engage in the unlawful, unfair and fraudulent conduct described herein.

79.    Accordingly, Plaintiffs, individually and on behalf of all the California Subclass, seek restitution from Defendant of all money from Plaintiffs and the other members of the California Subclass obtained as a result of Defendant's unfair competition, an injunction prohibiting Defendant from continuing and further engaging in its unlawful, unfair and fraudulent conduct, corrective disclosures, and all other relief the Court deems appropriate.

## COUNT II

**Violation of California's Consumers Legal Remedies Act ("CLRA")
Cal. Civ. Code § 1750, *et seq.*
(*for the Nationwide Class; in the alternative, California Consumer Subclass*)**

80.    Plaintiffs re-allege and incorporate Paragraphs 1-61 as if fully set forth herein.

81.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or in the alternative, California Consumer Subclass.

82.    The CLRA was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in California Civil Code § 1770.

83.    Plaintiffs and members of the Nationwide Class and California Consumer Subclass are "consumers," Defendant is a "person," and the Products are "goods" within the meaning of the CLRA. Cal. Civ. Code § 1761(a), (c) and (d).

84.    The purchase of Products by Plaintiffs and members of the Nationwide Class and California Consumer Subclass constitute "transactions" within the meaning of the CLRA. Cal. Civ. Code § 1761(e).

85.    California Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have[.]" Defendant represents and continues to represent that the Products have characteristics – that they will be fit for ordinary use – when they do not have such characteristics. In fact, the Products suffer from a defect known as Joy-Con Drift, which severely limits its central functionality and general gameplay. Therefore, Defendant has violated section 1770(a)(5) of the CLRA

86.    California Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendant represents and continues to represent that the Products are of a particular standard (fit for ordinary use) when

19

**CLASS ACTION COMPLAINT**

they are of another standard instead (contain a defect that severely limits its functionality). Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

87. California Civil Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as being free from defect and fit for their ordinary use, such that a reasonable consumer would believe that the Products would not have Joy-Con Drift, and then not selling the Products as such, Defendant has violated section 1770(a)(9) of the CLRA.

88. California Civil Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By marketing and selling the Products as being defect-free and fit for their ordinary use, such that a reasonable consumer would believe that the Products would not have Joy-Con Drift, and then selling the Products with the defect, Defendant has violated section 1770(a)(16) of the CLRA.

89. Defendant also violated the CLRA based on fraudulent omission because it had a duty to disclose that the Products suffer from Joy-Con Drift. Defendant had exclusive knowledge of the defect based on years of complaints and numerous attempts to repair and/or replace the Products. The defect was material because had Plaintiffs and members of the Nationwide Class and California Consumer Subclass known the omitted information, they would not have purchased the Products or would have paid substantially less for them.

90. At all relevant times, Defendant has known or reasonably should have known that the Products were defective and not fit for ordinary use, and that Plaintiffs and members of the Nationwide Class and California Consumer Subclass would reasonably and justifiably rely on Defendant and its expertise in design and manufacturing to provide Products that were defect-free and fit for ordinary use.

91. Plaintiffs and members of the Nationwide Class and California Consumer Subclass reasonably and justifiably relied on Defendant and its expertise

in design and manufacturing to provide Products that are defect-free and fit for their ordinary use.

92.     Plaintiffs and members of the Nationwide Class and California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would not have purchased the Products or would have paid significantly less for the Products had they known that Defendant's conduct was unlawful and fraudulent.

93.     Pursuant to California Civil Code § 1782(d), Plaintiffs, individually and on behalf of the other members of the Nationwide Class and California Consumer Subclass, seek a court order enjoining the above-described wrongful acts and practices of Defendant and for other appropriate injunctive relief.

94.     Plaintiff Luz Sanchez's affidavit stating facts showing that venue in this Court is proper pursuant to California Civil Code § 1782 Code § 1780(d) is attached hereto.

95.     Plaintiffs provided notice to Defendant of its CLRA violation pursuant to California Civil Code § 1782 Code § 1782 on September 29, 2020. If within 30 days of receipt, Defendant does not agree to rectify the problems identified, Plaintiffs will amend this Complaint to seek damages pursuant to Cal. Civ. Code § 1780 on behalf of themselves and the California Consumer Subclass.

## COUNT III
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(*for the Nationwide Class; in the alternative, California Subclass*)**

96.     Plaintiffs re-allege and incorporate Paragraphs 1-61 as if fully set forth herein.

97.     Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or in the alternative, California Subclass.

98.     The FAL, in relevant part, states that "[i]t is unlawful for any . . .

21

**CLASS ACTION COMPLAINT**

corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500.

99.   Defendant's material misrepresentations and omissions alleged herein violate California Business & Professions Code § 17500.

100.   Defendant has represented and continues to represent to the public, including Plaintiffs and members of the Nationwide Class and California Subclass, that the Products are defect-free and function properly. Furthermore, by selling the Products as "Joy-Con controllers," Defendant has represented that the Products would be controllers fit for their ordinary use and not defective with Joy-Con Drift. Defendant's representations are misleading because the Products are defective and not fit for ordinary use. Ordinary use of Joy-Con controllers does not involve having to use a controller with Joy-Con Drift. Furthermore, Defendant is aware and had exclusive knowledge of the defect (as described *supra*) and had a duty to disclose based on years of complaints and numerous attempts to repair and/or replace the Products.

101.   Further, upon information and belief, Defendant had a financial motive to conceal the defect, as it did not want to stop selling the Products.

102.   Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be false and misleading, Defendant violated the FAL.

**CLASS ACTION COMPLAINT**

103.   As a result of Defendant's false advertising, Defendant has and continues to fraudulently obtain money from Plaintiffs and members of the Nationwide Class and California Subclass.

104.   As a direct and proximate result of Defendant's false, misleading, and deceptive advertising, Plaintiffs and members of the Nationwide Class and California Subclass have suffered injury-in-fact and have lost money.

105.   Pursuant to California Business & Professions Code §§ 17203 and 17500, Plaintiffs request that this Court cause Defendant to restore this fraudulently obtained money to Plaintiffs and members of the Nationwide Class and California Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs and members of the Nationwide Class and California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT IV
### Violation of the Song-Beverly Consumer Warranty Act
### Breach of Implied Warranty of Merchantability
### (*for the California Subclass*)

106.   Plaintiffs re-allege and incorporate Paragraphs 1-61 as if fully set forth herein.

107.   Plaintiffs bring this claim individually and on behalf of the California Subclass.

108.   Plaintiffs and those similarly situated were "buyers" of "consumer goods" as defined under California Civil Code § 1791(a-b). The Products are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

109.   Defendant is a "manufacturer" within the meaning of California Civil Code § 1791(j).

110.   Defendant impliedly warranted to Plaintiffs and members of the

**CLASS ACTION COMPLAINT**

California Subclass that the devices were "merchantable" within the meaning of California Civil Code §§ 1791.1(a) & 1792.

111.   California Civil Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label.

112.   The Products would not pass without objection in the gaming console trade because the defect causes all or substantially all of the controllers to experience Joy-Con Drift and to not operate as intended.

113.   Because the defect materially reduces the reliability and dependability of the devices, they are not fit for ordinary purposes for which such goods are used.

114.   Further, the Products are not adequately labeled because  the labeling fails to disclose and does not advise consumers of the defect, which is a material fact regarding the Products' central functionality. Because Defendant omitted this material fact regarding the Products' central functionality, Defendant was obligated to disclose this information to Plaintiffs and other consumers. Yet, Defendant failed to disclose the defect, which misled consumers.

115.   The defect deprived Plaintiffs and members of the California Subclass of the benefit of their bargain and has caused the devices to be worth less than what Plaintiffs and members of the California Subclass paid for them.

116.   As a direct and proximate result of Defendant's breach of implied warranty, Plaintiffs and members of the California Subclass received goods whose condition substantially impairs their value. Plaintiffs and members of the California Subclass have been damaged by the diminished value of the Products, their malfunctioning, and actual and potential increased maintenance and repair or

1  replacement costs.

2  117.  Under California Civil Code §§ 1791.1(d) and 1794, Plaintiffs and

3  members of the California Subclass are entitled to damages and other legal and

4  equitable relief including, at their election, the purchase price of the Products, or the

5  overpayment or diminution in value of their devices, and are also entitled to their

6  attorney fees and costs.

7  **COUNT V**
**Unjust Enrichment/Quasi-Contract**

8  **(*for the Nationwide Class; in the alternative, California Subclass*)**

9

10  118.  Plaintiffs re-allege and incorporate Paragraphs 1-61 as if fully set forth

11  herein.

12  119.  Plaintiffs bring this claim individually and on behalf of Nationwide

13  Class, or in the alternative, for the California Subclass.

14  120.  As alleged herein, Plaintiffs and members of the Nationwide Class and

15  California Subclass have reasonably relied on Defendant to provide what it

16  promised—Products that are not defective. Yet, they have not received all of the

17  benefits promised by Defendant.

18  121.  Plaintiffs and members of the Nationwide Class and California Subclass

19  conferred upon Defendant non-gratuitous payments for the Products and would not

20  have made these payments had they known that the Products suffered from Joy-Con

21  Drift. Defendant accepted or retained the non-gratuitous benefits conferred by

22  Plaintiffs and members of the Nationwide Class and California Subclass, with full

23  knowledge and awareness that, as a result of Defendant's deception, breach of implied

24  warranty, failure to disclose, and sale of defective controllers, Plaintiffs and members

25  of the Nationwide Class and California Subclass were not receiving a product of the

26  quality, nature, fitness, or value that had been represented by Defendant and that

27  reasonable consumers would have expected.

28

25

**CLASS ACTION COMPLAINT**

122.   Defendant has been unjustly enriched in retaining the revenues derived from purchases of the Products by Plaintiffs and members of the Nationwide Class and California Subclass. Defendant's retention of that benefit under these circumstances is unjust and inequitable because Defendant misrepresented and sold defective Products that were not fit for their ordinary use. Defendant's misrepresentations caused injuries to Plaintiffs and members of the Nationwide Class and California Subclass because they paid for defective Products.

123.   Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Nationwide Class and California Subclass under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiffs and members of the Nationwide Class and California Subclass for unjust enrichment, as ordered by the Court.

## <u>COUNT VI</u>
### Violation of Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.*
### Implied Warranty of Merchantability Under California Law
### (*for the Nationwide Class; in the alternative, California Subclass*)

124.   Plaintiffs re-allege and incorporate Paragraphs 1-61 as if fully set forth herein.

125.   Plaintiffs bring this claim individually and on behalf of Nationwide Class, or in the alternative, for the California Subclass.

126.   The Products are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

127.   Plaintiffs and members of the Nationwide and California Subclass are "consumers" as defined in 15 U.S.C. § 2301(3).

128.   Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

129.   In connection with the sale of the Products, Defendant issued an "implied

**CLASS ACTION COMPLAINT**

warranty" as defined in 15 U.S.C. § 2301(7), which warranted that the Products are defect-free and fit for their intended and ordinary use.

130.   Defendant breached the implied warranty by manufacturing, selling, and promoting Products that are not defect-free and fit for their intended and ordinary use. Rather, the Products suffer from Joy-Con Drift, a defect that affects their central functionality. Accordingly, Defendant has violated the statutory rights due to Plaintiffs and members of the Nationwide and California Subclass pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., thereby damaging Plaintiffs and members of the Nationwide and California Subclass.

131.   Prior to filing this action, Plaintiffs, by and through their counsel, provided Defendant with written notice of their claims pursuant to 15 U.S.C. § 2310(e) and also notified Defendant that they were acting on behalf of all persons who purchased the Products during the relevant class period.

### COUNT VII
### Declaratory and Injunctive Relief
#### (*for the Nationwide Class; in the alternative, California Subclass*)

132.   Plaintiffs re-allege and incorporate Paragraphs 1-61 as if fully set forth herein.

133.   Plaintiffs bring this claim individually and on behalf of Nationwide Class, or in the alternative, for the California Subclass.

134.   A substantial controversy exists between Plaintiffs and members of the Nationwide Class and California Subclass on the one hand, and Defendant, on the other. Pursuant to 28 U.S.C. § 2201, or in the alternative, under California law, this Court may declare the rights and legal relations of any interested party seeking such declaration.

135.   The substantial controversy in this case is over Defendant's Terms of Use, which among other things, requires Plaintiff M.S., a minor, and other minors of the Nationwide Class and California Subclass to submit to binding arbitration.

27

**CLASS ACTION COMPLAINT**

Defendant's Terms of Use also purports to deny Plaintiff M.S., a minor, and other minors of the Nationwide Class and California Subclass the right to bring or participate in a class action.

136.   Plaintiff Luz Sanchez is not a signatory to Defendant's Terms of Use. She seeks, along with Plaintiff M.S., a judgment declaring that Defendant's Terms of Use are invalid as to all minors under the age of 18 and all individuals who agreed to Defendant's Terms of Use when they were under the age of 18 ("Minors"). Specifically, Plaintiffs seek declaratory relief invalidating any agreements purportedly waiving Defendant's liability, or preventing Plaintiff M.S. and other Minors from proceeding with their claims in Court on a class-wide basis.

137.   Plaintiffs also seek a permanent injunction precluding Defendant from disseminating their illegal purported class action waiver and arbitration provisions on Plaintiff M.S and other Minors of the Nationwide Class and California Subclass.

138.   Plaintiff M.S., as a minor, and by and through his parent and guardian Luz Sanchez, hereby disaffirms Defendant's Terms of Use, including any waiver of rights, limitations on liability, arbitration agreement, and class action waiver.

139.   Any agreement set forth in Defendant's Terms of Use is also illusory because it does not require Defendant to do and/or provide anything in exchange for this wavier of rights and liabilities.

140.   The provisions of Defendant's Terms of Use are complicated, ambiguous, unfairly one-sided towards Defendant, the drafter, and are otherwise difficult for the average consumer, especially Minors, to understand. Any ambiguity or lack of clarity in the Terms of Use must be held against Defendant.

141.   Plaintiffs paid consideration for the goods and services provided by Defendant. The Terms of Use were not material to that basic transaction and did not provide any benefit to Plaintiffs.

142.   Defendant waived its ability to enforce the Terms of Use by knowingly

**CLASS ACTION COMPLAINT**

1   and affirmatively knowingly manufacturing, marketing, and selling the defective
2   Products, and failing to adequately repair and/or replace them, in violation of the
3   Terms of Use.

4        143.   Among other things, Defendant should be collaterally estopped from
5   arguing that its Terms of Use binds any Minor recipient to a class action waiver or to
6   an arbitration agreement.

7        144.   Plaintiffs also request a judgment declaring the liability limitations and
8   dispute resolution provisions of Defendant's Terms of Use to be illusory, illegal,
9   unconscionable, against public policy or otherwise unenforceable under applicable
10  law by Defendant against Plaintiff M.S. and Minors of the Nationwide Class and
11  California Subclass.

12                          **PRAYER FOR RELIEF**

13       WHEREFORE, Plaintiffs, individually and on behalf of the other members of
14  the proposed Nationwide Class, California Subclass, and California Consumer
15  Subclass, respectfully request that the Court enter judgment in their favor and against
16  Defendant as follows:

17       A.     Certifying the Nationwide Class, California Subclass, and California
18  Consumer Subclass as requested herein, designating Plaintiffs as class representatives
19  and appointing the undersigned counsel as class counsel;

20       B.     Declaring that Defendant is financially responsible for notifying the
21  Class members of the pendency of this suit;

22       C.     Ordering restitution and disgorgement of all profits and unjust
23  enrichment Defendant obtained from Plaintiffs and the class members as a result of
24  Defendant's unlawful, unfair and fraudulent business practices;

25       D.     Ordering payment of damages as permitted by law, including actual,
26  compensatory, statutory, and punitive damages, to the full extent permitted by law;

27       E.     Ordering declaratory relief and injunctive relief as permitted by law or
28

**CLASS ACTION COMPLAINT**

equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

F.     Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Classes;

G.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

H.     Ordering such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all claims in this Complaint so triable.

DATED: October 5, 2020                **FARUQI & FARUQI, LLP**

By: */s/ Benjamin Heikali*
      Benjamin Heikali

BENJAMIN HEIKALI (Bar No. 307466)
 bheikali@faruqilaw.com
RUHANDY GLEZAKOS (Bar No. 307473)
 rglezakos@faruqilaw.com
JOSHUA NASSIR (Bar No. 318344)
 jnassir@faruqilaw.com
**FARUQI & FARUQI LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, California 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

*Attorneys for Plaintiffs*

30

**CLASS ACTION COMPLAINT**

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Luz Sanchez, declare as follows:

1.      I am a Plaintiff in this action and a citizen of the State of California. I am also conducting this action on behalf of Plaintiff M.S., a minor, as his mother and guardian. I have personal knowledge of the facts stated herein and, if called as a witness, I would testify competently thereto.

2.      This Class Action Complaint is filed in the proper place of trial because Defendant resides and is doing business in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, executed on _____ at Firebaugh, California.

10/2/2020 | 12:49 AM EDT

_____
Luz Sanchez